UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
TAREN TYLER,

                Plaintiff,            **MEMORANDUM & ORDER**
                                                        20-CV-1714 (MKB)
      v.

DETECTIVE JASON MAGGIO, DETECTIVE
MICHAEL O'LEARY, EMERGENCY SERVICE
UNIT, ADA JAIME KLEIDMAN, and JOHN
DOES,

                Defendants.
-------------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

      Plaintiff Taren Tyler, proceeding *pro se* and currently incarcerated at Clinton Correctional Facility in Dannemora, New York, commenced the above-captioned action on February 10, 2020[1] against Defendants Detective Jason Maggio and Detective John O'Leary,[2] (Compl., Docket Entry No. 2), and filed an Amended Complaint on June 25, 2020 against Defendants Detective Maggio, Detective Michael O'Leary, the Emergency Service Unit ("ESU"), Assistant District Attorney ("ADA") Jaime Kleidman, and John Does, (Am. Compl.,

---

[1] On March 9, 2020, the Chief Judge of the Southern District of New York ("SDNY"), Colleen McMahon, granted Plaintiff's application to proceed *in forma pauperis* (Order dated Mar. 9, 2020, Docket Entry No. 5), and by Order dated March 31, 2020, SDNY Judge Mary Kay Vyskocil transferred the action to the Eastern District of New York, (Transfer Order, Docket Entry No. 7; Notice of Transfer, Docket Entry No. 9).

[2] By letter dated March 20, 2020, Plaintiff submitted an "Affidavit Statement of Facts" and requested *pro bono* counsel. (Letter dated Mar. 20, 2020, Docket Entry No. 8.) By Memorandum and Order dated June 4, 2020, the Court denied Plaintiff's motion for assignment of *pro bono* counsel and referred Plaintiff's claims against Detectives Maggio and John O'Leary to Magistrate Judge Robert M. Levy for pretrial supervision. (Mem. & Order dated June 4, 2020, Docket Entry No. 11.)

Docket Entry No. 12). Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 arising from his arrest on March 7, 2017. (Am. Compl. ¶¶ 10–11.)

For the reasons stated below, the Court dismisses the claim against ADA Kleidman and refers Plaintiff's claims against Detective Maggio, Detective O'Leary, and the unknown ESU officers to Judge Levy for pretrial supervision.

## I. Background

Plaintiff alleges that on March 2, 2017, ADA Kleidman authorized Detectives Maggio and O'Leary "to locate and arrest" Plaintiff by using Global Positioning System ("GPS") location services, "wire taps[,] and [a] pen subpoena" to unlawfully obtain information from Metro PCS "for the purpose of executing the unlawful entry into [P]laintiff's residence on March 7, 2017." (Am. Compl. ¶¶ 10–11.) Plaintiff also alleges that on March 7, 2017, at approximately 5:30 AM, Detectives Maggio and O'Leary and unknown ESU officers "with tactical gear and body cameras using phone GPS [obtained] from [the] prosecutor" broke down the front door to Plaintiff's apartment at 22-45 Dix Avenue, #4F, in Far Rockaway, New York (the "Apartment"), forced their way into the Apartment without a warrant, and injured him as they handcuffed him. (*Id.* ¶¶ 14–15.) Plaintiff further alleges that Detectives Maggio and O'Leary and unknown ESU officers physically attacked him, pinned him to the floor, and "press[ed] their knees together" on his "head, neck, and back . . . for several minutes causing [him] to lose consciousness" and causing "several cuts and bruises to [his] face and forehead." (*Id.* ¶ 15.) Plaintiff asked why he was being arrested and Detective Maggio replied, "You know what you did. Just go to court and fight your case like a man." (*Id.* ¶ 16.) Thereafter, Plaintiff was taken to the 25th Police Precinct. (*Id.*) Plaintiff asserts that following his arrest, Defendants conspired to "cover up" the alleged violations by "falsifying arrest reports and voluntary

2

disclosure forms" and adding an incorrect arrest address. (*Id.* ¶ 19.) Plaintiff states that ADA Kleidman "failed to justify or correct [the] constitutional violation[s]" and failed to investigate the arrest. (*Id.* ¶ 20.)

Plaintiff argues that ADA Kleidman violated his rights to privacy, due process, and equal protection under the Fourth, Fifth, and Fourteenth Amendments. (*Id.* ¶ 18.) He also asserts that Detectives Maggio and O'Leary violated his Fourth Amendment rights. (*Id.* ¶ 11.) As a result of Defendants' actions, Plaintiff alleges that he has suffered "permanent facial scarring and injury" and loss of employment, (*id.* ¶ 22), and he now seeks $1,000,000 in damages, (*id.* at 6).

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally

construe papers submitted by *pro se* litigants "to raise the strongest arguments they suggest" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994))); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally" (citing *Erickson*, 551 U.S. at 72)).

Similarly, the Prison Litigation Reform Act ("PLRA") requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted, but mandatory). In addition, pursuant to the *in forma pauperis* statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### b. Plaintiff's section 1983 claims

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *See*

*Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." (internal quotation marks omitted) (citation omitted)).

### i. Plaintiff has alleged a plausible claim against Detective Maggio, Detective O'Leary, and ESU Officers

Plaintiff alleges the personal involvement of Detective Maggio, Detective O'Leary, and unnamed ESU officers in the violation of his constitutional rights — that they entered his home without a warrant, arrested him, and caused injury to him during the arrest. (Am. Compl. ¶¶ 14–15.) The Court therefore refers Plaintiff's claims against Detective Maggio, Detective O'Leary, and unnamed ESU officers to Judge Levy for pretrial supervision.

### ii. Plaintiff fails to state a claim against ADA Kleidman

Plaintiff alleges that ADA Kleidman (1) authorized Detectives Maggio and O'Leary "to locate and arrest" Plaintiff by using "GPS location[services,] wire taps[,] and [a] pen subpoena" to unlawfully obtain information from Metro PCS "for the purpose of executing the unlawful entry into [P]laintiff's residence," (*id.* ¶¶ 10–11); (2) "failed to justify or correct [the] constitutional violation[s]" and failed to investigate Plaintiff's arrest, (*id.* ¶ 20); and (3) violated his rights to privacy, due process, and equal protection under the Fourth, Fifth, and Fourteenth Amendments, (*id.* ¶ 18).

Prosecutors performing duties related to their prosecutorial function are protected by absolute immunity. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under [section] 1983 for their conduct in 'initiating a prosecution and in presenting the State's case.'" (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431

(1976)); *Corley v. Wittner*, 811 F. App'x 62, 63 (2d Cir. 2020) (holding that "prosecutors were absolutely immune" from suit involving a criminal investigation and resultant state charges); *McDonough v. Smith*, 898 F.3d 259, 269 (2d Cir. 2018) ("Prosecutors are protected by absolute immunity for their acts that are 'intimately associated with the judicial phase of the criminal process' and their role as advocates." (quoting *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013))); *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) (affirming dismissal of claims against prosecutor for conduct pertaining to role as an advocate in judicial proceedings); *Byrne v. City of New York*, 736 F. App'x 263, 265 (2d Cir. 2018) (same); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (holding that a prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under [section] 1983" (citations omitted)).

The Second Circuit recently clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). To prevail on a section 1983 claim for malicious prosecution, a Plaintiff is "required to show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment,'" *id.* at 24 (alteration in original) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)), and "that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor," *id.* (first citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); and then citing *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013)). The elements of malicious prosecution under New York law are substantially the same. *See Morris v. Silvestre*, 604 F. App'x 22, 24 (2d Cir. 2015) ("The

6

elements of a claim for malicious prosecution in New York are '(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions.'" (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).  However, under section 1983, a plaintiff is required to show an "affirmative indication[] of innocence to establish 'favorable termination,'" *see Lanning*, 908 F.3d at 25, and under state law, the favorable termination element is satisfied "so long as the final termination of the criminal proceeding is not inconsistent with the [p]laintiff's innocence," *id.* (citing *Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *17 (N.D.N.Y. Mar. 4, 2016)).  Because the lack of probable cause is an element of a malicious prosecution claim, "the existence of probable cause is . . . a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (first quoting *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013); and then citing *Torres v. Jones*, 26 N.Y.3d 742, 761 (2016)).

Although Plaintiff asserts that ADA Kleidman acted in an investigatory capacity, he does not allege that the prosecution terminated in his favor.  Accordingly, based on the facts alleged, Plaintiff fails to state a malicious prosecution claim.  *See* 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii).

### iii. *Valentin* order

As to the unnamed ESU officers who allegedly used excessive force against Plaintiff on March 7, 2017, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court directs the Corporation Counsel for the City of New York to ascertain the full names of the individuals employed by the ESU on March 7, 2017, who accompanied Detectives Maggio and O'Leary to Plaintiff's home.

Corporation Counsel shall identify these individuals and provide the addresses where these Defendants can currently be served within forty-five (45) days from the date of this Memorandum and Order. Corporation Counsel need not undertake to defend or indemnify these individuals at this juncture. This Memorandum and Order merely provides a means by which Plaintiff may name and properly serve the Defendants as instructed by the Second Circuit in *Valentin*, 121 F.3d at 72. Once this information is provided, Plaintiff's action shall be deemed amended to reflect the full names and badge numbers of these officers, a summons shall be issued, and the Court shall direct service on these Defendants, once service is reinstated.

### III. Conclusion

For the reasons set forth above, the Court dismisses the action against ADA Kleidman. The action shall proceed as to Detective Maggio, Detective O'Leary, and the unnamed ESU officers.

The Court directs the Clerk of Court to issue amended summonses against Detectives Maggio and O'Leary, employed at the 25th Police Precinct on March 7, 2017, and directs the United States Marshals Service to serve the Summonses and Amended Complaint on Detectives Maggio and O'Leary without prepayment of fees.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438,

444–45 (1962).  The Clerk of Court is directed to send a copy of this Memorandum and Order to the Plaintiff and to the Special Federal Litigation Division of the Corporation Counsel for the City of New York.

Dated: December 4, 2020
       Brooklyn, New York

SO ORDERED:

  s/ MKB
MARGO K. BRODIE
United States District Judge